```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | Consolidated Under |
| LIABILITY LITIGATION (No. VI) | : | MDL DOCKET NO. 875 |
| | : | |
| | : | |
| GAIL AND JAMES WAYNE | : | No. 2:10-cv-67141 |
| BARNES, ET AL., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Transferred from the Central |
| | : | District of California |
| VARIOUS DEFENDANTS | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         MARCH 15, 2011

Before the Court is Plaintiffs Motion to Remand, wherein Plaintiffs assert that Defendant General Electric Company's removal under the federal officer removal statute was improper for three reasons: (1) Defendant General Electric's Notice of Removal was untimely; (2) Plaintiffs have waived all claims for actions taken under the direction and control of a federal officer; (3) Defendant General Electric ("Defendant") has failed to raise a "colorable" federal officer defense.

**I. FACTS**

Plaintiffs, Gail and James Wayne Barnes (deceased) commenced the instant action on April 21, 2009, in California

1

state court, alleging that James Wayne Barnes's lung cancer was caused by exposure to the asbestos-containing products of multiple defendants. (Pl.'s Mot., doc. no. 22, at 8.) Defendant General Electric filed a notice of removal on February 24, 2010. (Id.) On May 4, 2010, the case was transferred to the Eastern District of Pennsylvania for consolidated pre-trial proceedings as part of In Re: Asbestos, Multidistrict Litigation No. 875.

## II. DISCUSSION

### A. Timeliness

The timeliness of removal is an issue of federal law. In the context of a Multidistrict Litigation case, issues of federal law are governed by the law of the circuit in which the MDL court sits. In Re Asbestos Prods. Liab. Litig. (Oil Field Cases), 673 F.Supp. 2d 358, 362 (E.D. Pa. 2009)("[I]n cases where jurisdiction is based on federal question, this Court, as the transferee court, will apply federal law as interpreted by the Third Circuit."). Therefore, the Court will apply Third Circuit precedent to determine whether or not Defendant's notice of removal was timely.

The federal officer removal statute provides that a notice of removal must be filed within thirty (30) days of a defendant's receipt of the initial pleading or, "[i]f the case stated by the initial pleading is not removable," within thirty

days after defendant's receipt of "an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1442(a)(1). The first thirty-day window for removal is only triggered when "the four corners of the pleading . . . informs the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present." Foster v. Mutual Fire Marine & Inland Ins. Co., 986 F.2d 48, 53 (3d Cir. 1993) rev'd on other grounds, Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999). In Foster, the Third Circuit established that the analysis for determining whether the four corners of the pleading is sufficient is an objective one: "the issue is not what the defendant knew, but what the relevant document said." Id.

In the instant case, Defendant invokes the second timeframe, arguing that the case was not removable on the face of Plaintiffs' initial complaint, but that Plaintiffs' Responses to Defendant's Special Interrogatories identified, for the first time, that the claims against Defendant arose from James Clyde Barnes's ("Decedent"'s) work on Defendant's turbines at Naval Shipyards. (Def.'s Resp., doc. no. 26, at 10.) Plaintiffs respond that the four corners of the Complaint put Defendant on notice of the potential removability of the case. (Pl.'s Mot. Remand, doc. no. 22-1, at 10.)

Plaintiffs' Complaint against twenty five (25) named Defendants states that, "Decedent's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit 'A'." (Pl.'s Compl., doc. no. 34, at ¶ 9.) Plaintiffs' Exhibit "A" identifies three potential sites of exposure: (1) The Long Beach Naval Shipyard from 1969-1989 (2) Decedent's home from 1989-1993; and (3) Country-Fed Meat in Arkansas, where Decedent was a salesman from 1993-2002. (Id. at p. 31.) The Exhibit identifies various types of asbestos-containing products to which Decedent was allegedly exposed, including "insulation" and "electronic and electronic equipment," inter alia, which could arguably implicate Defendant's turbines. (Id.) However, there is no mention of turbines, specifically, and nothing in the Complaint connects Defendant's product to the Long Beach Naval Shipyard worksite.

Under these circumstances, the four corners of Plaintiffs' Complaint lacked the "substantial degree of specificity" needed to establish the existence of a federal defense. Foster, 986 F.2d at 53. Simply stating that Decedent was employed at the Long Beach Naval Shipyard is insufficient. Defendant did not have a basis for removal until the nexus between Plaintiffs' claims and actions allegedly taken by Defendant under the direction of a federal officer was established. This nexus was not revealed until Plaintiffs'

4

Answers to Special Interrogatories stated that, "Plaintiffs contend that [Defendant] sold, supplied, marketed, and distributed asbestos containing products to which Decedent was exposed while in the U.S. Navy . . . including: . . . Marine Steam Turbines." (Def.'s Resp., doc. no. 26, at 11.) Therefore, Defendant's notice of removal was timely, as it was filed thirty days after Defendant received Plaintiffs' Answers to Special Interrogatories.

### B. **Plaintiffs' Disclaimer**

Plaintiffs further argue that Defendant's removal is improper because Plaintiffs' Complaint expressly disclaims any claims "caused by the acts or omissions of defendants committed at the specific and proven direction of an officer of the United States government acting in his official capacity." (Pl.'s Compl. ¶ 9A(k), doc. no. 34, at 10.) The question of whether Plaintiffs have effectively disclaimed any federal claims is controlled by federal law. See Mesa v. California, 489 U.S. 121 (1989) (holding that under § 1442(a), "the raising of a federal question in the officer's removal petition . . . constitutes the federal law under which the action against the federal officer arises for Article III purposes."). In cases arising under the laws of the United States, "[i]t is axiomatic that federal law governs questions involving the interpretation of a federal

5

statute." In Re Columbia Gas Systems, Inc., 997 F.2d 1039, 1055 (3d Cir. 1993).

In support of the effectiveness of their disclaimer, Plaintiffs cite numerous cases for the proposition that Plaintiffs, as the master of their complaints, are able to limit claims to avoid federal jurisdiction. See, e.g., Jones v. General Tire & Rubber Co., 541 F.2d 660, 664 (7th Cir. 1976)("the plaintiff has the prerogative of determining the theory of his action and . . . may defeat removal to the federal courts by avoiding allegations which provide a basis for the assertion of federal jurisdiction."); see also Willy v. Coastal Corp., 885 F.2d 1160, 1167 (5th Cir. 1988)(same); Carpenter v. Wichita Indep. Sch. Dist., 44 F.3d 362, 367 (5th Cir. 1995)(same); Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 814 (1986)(holding that "the presence of a federal issue in a state-created cause of action" does not automatically vest federal question jurisdiction).

However, all of the above cases involved removal under the general removal statute, 28 U.S.C. § 1441(b).[1] Here, by contrast, removal is premised on the federal officer removal

---

[1] Section § 1441(b) provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship of residence of the parties."

statute, 28 U.S.C. § 1442.[2]  This distinction is significant for two reasons.

First, the presumption under the general removal statute favors remand, due to the limited jurisdiction of federal courts, while the presumption under the federal officer removal statute favors removal, for the benefit of the federal officer involved the case.  While removal under 28 U.S.C. § 1441 is to be "strictly" construed, with doubts resolved in favor of remand, the federal officer removal statute, by contrast, is to be "broadly" construed in order to liberally grant federal officers access to a federal forum.  See Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1261 (3d Cir. 1994); see also Hagen v. Benjamin Foster Co., 739 F.Supp. 2d 770 (E.D. Pa. 2010) (Robreno, J.) (holding that the record supporting removal should be viewed in the light most favorable to the removing defendant).

The Supreme Court has specifically discouraged against a "narrow, grudging" interpretation of the federal officer removal statute, emphasizing that access to federal courts for federal officers should be liberally granted "to have the validity of the defense of official immunity tried in a federal court." Willingham v. Morgan, 395 U.S. 402, 407 (1969).  The

---

[2]  Section § 1442(a) provides that any case against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" is removable.

presumption in favor of removal is necessary to ensure that a federal officer does not have to "win his case before he can have it removed" and provides for a federal forum to adjudicate the merits of the defense. Id. at 407.

In Jefferson County v. Acker, for example, removing defendants were two federal judges arguing that the county's tax was unconstitutional under the intergovernmental tax immunity doctrine. 527 U.S. 423, 429. There was a dispute over whether the judges were entitled to federal officer removal because it was not clear that witholding the tax was an act done "under color of office." Id. at 431-32. Plaintiffs argued that the ordinance made it unlawful for them to sit on the bench without paying the tax, and that they were therefore being sued for practicing their occupation, which was "under color of office." Id. at 432. The Solicitor General argued in opposition that the tax was a personal tax on their individual incomes and had nothing to do with any actions taken under color of office. Id. The Supreme Court recognized that "[t]o choose between those readings of the Ordinance is to decide the merits of the case." Id. Therefore, rather than require the defendants to win on the merits in order to remove the case, the Court "credit[ed] the judges' theory" and found that there had been an "adequate threshold showing" that the acts at issue had been done under color of federal office. Id.

8

In addition, federal officers may also remove a case based on the existence of a federal defense that is not apparent from the claim alleged. Id. at 431. Therefore, while "the federal question ordinarily must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal." Id. However, "suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law." Id. at 431.

Therefore, in the context of federal officer removal, Plaintiff can allege an entirely state-law cause of action, but will not be able to retain the case in state courts if the claim gives rise to a colorable federal defense. For example, in United States v. Todd, Plaintiff filed a law suit in state court against the Arkansas State Police to release files in their possession related to alleged criminal activities committed by Mr. Todd. 245 F.3d 691, 692 (8th Cir. 2001). The records actually belonged to the United States, and the United States Attorney for the Eastern District of Arkansas intervened as a defendant and removed the case to federal court. Id. The Court denied Plaintiff's motion to remand, finding that the U.S. Attorney had put forth a "colorable" federal defense: that the Freedom of Information Act precludes the release of documents related to an ongoing criminal investigation. Id. at 693.

9

Clearly, in Todd, Plaintiff alleged an entirely non-federal cause of action. Plaintiff did not even sue a federal officer. However, the United States's intervention in the case and the presence of a colorable federal officer defense transformed Plaintiff's state-law action into a federal one, without his approval or consent.

In light of the foregoing, Plaintiffs' disclaimer in the instant case is not effective to defeat Defendant's entitlement to a federal forum for the adjudication of the federal defense proffered. While Plaintiffs purport to exclude any claims against Defendant "caused by the acts or omissions of defendants committed at the specific and proven direction of an officer of the United States government acting in his official capacity," the only claims alleged against Defendant arises from exposure on U.S. Naval ships at U.S. Naval shipyards, for which Defendant has a "colorable" federal defense. See infra, Section III. Recognizing this disclaimer would deprive the federal officer of the right to have the adequacy of the threshold determination, whether there is federal subject matter jurisdiction under the federal officer removal statute, made by a federal court. Jefferson County, 527 U.S. at 432; Feidt v. Owens Corning Fiberglas Corp., 153 F.3d at 127.

## C. The Government Contractor Defense

As to Defendant's asserted grounds for federal jurisdiction, to invoke the federal officer removal statute, a defendant must satisfy four elements: (1) it is a "person" within the meaning of the statute; (2) the conduct at issue occurred while defendant was "acting under" the direction of a federal office; (3) it has a colorable federal defense; and (4) there is a causal nexus between plaintiff's claims and acts performed under color of federal office. 28 U.S.C. § 1442(a)(1); Feidt v. Owens Corning Fiberglas Corp., 153 F.3d at 127.

Prongs one, two and four are satisfied. The issue in this case is whether Defendant has satisfied prong three by raising a colorable federal contractor defense. The government contractor defense provides that a government contractor's state law product liability duties are displaced when the government exercises a "discretionary function" over the design of the product. See Boyle v. United Tech. Corp., 487 U.S. 500, 512 (1988). The government contractor defense applies when, "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. In the context of failure to warn claims, defendant must show that the government "exercised its

discretion" over the type and content of a warning, if any, that was to be attached to defendant's product.  Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003 (7th Cir. 1996), cert. denied, 520 U.S. 1116 (1997); In re Joint Eastern & Southern District New York Asbestos Litigation, 897 F.2d 626 (2d Cir. 1990); Kerstetter v. Pacific Scientific Co., 210 F.3d 431, 437 (5th Cir. 2000); Tate v. Boeing Helicopters, 140 F.3d 654, 660 (6th Cir. 1998); Butler v. Ingalls Shipping, Inc., 89 F.3d 582, 586 (9th Cir. 1996).

Once a defendant establishes that the United States Government exercised its discretion regarding the warnings (or lack of warnings) to be given, and that a defendant complied with the directive, the defendant still must show that it warned the government of hazards in the products, or that the United States Government "knew as much or more than the defendant contractor about the hazards" of the product.  Beaver Valley Power Co. v. National Engineering & Contracting Co., 883 F.2d 1210, 1216 (3d Cir. 1989); see also Chicano v. GE, 2004 U.S. Dist. LEXIS 20330 at *38 (E.D. Pa. 2004)("Defendant can also satisfy [the third prong] by showing that the government knew as much or more than defendant contractor about the hazards of the equipment.").

In the instant case, Defendant manufactured and sold equipment to the United States Navy, and its equipment was incorporated into numerous vessels, such as the U.S.S. Ortolan

12

and the U.S.S. Jouett that were located at the Long Beach Naval Shipyard.  (doc. no. 22.)  Plaintiffs assert that Decedent was exposed to asbestos while working on Defendant's asbestos-insulated turbines as a radioman/communications officer at the Long Beach Naval Shipyard.  (doc. no. 22. at 7.)

In support of its assertion of federal jurisdiction, Defendant has proffered the declarations of Lawrence Stilwell Betts, MD, PhD, Admiral Ben J. Lehman, and David Hobson (former Manager of Navy Customer Service for Defendant's Navy and Small Steam Turbine Department).  Each of these are addressed in turn.

> 1.  **Declaration of Lawrence Stilwell Betts, MD, PhD** (doc. no. 26-1 at ¶ 19.)  Dr. Betts reviews the history of what was known to the Navy about the hazards of asbestos and concludes that, "[t]he information possessed by the Navy, with respect to the specification and use of asbestos, and the health hazards associated with its use aboard Navy vessels, far exceeded any information that possibly could have been provided by a turbine manufacturer.  Additionally, the turbine manufacturer had absolutely no responsibility or control over the operating workplace or personnel – both essential aspects of hazard communication."
>
> 2.  **Declaration of Ben J. Lehman, retired Rear Admiral of the United States Navy** (doc. no. 26-3 at ¶ 8.)  Mr. Lehman states that, "Navy equipment suppliers like GE simply could not affix warnings about asbestos insulation on its equipment, or include warnings about asbestos insulation in its equipment manuals . . . if GE were to supply such extraneous information the same would have taken the unit and/or its manuals out of compliance with the specifications and would have resulted in the rejection of the unit and/or the manual."
>
> 3.  **Declaration of David Hobson, Manager of Navy Customer Service for GE's Navy and Small Steam Turbine**

>     **Department** (doc. no. 26-4 at ¶ 21.)  Mr. Hobson states
> that "the Navy had precise specifications, practices,
> and procedures in place that governed the content of
> any communication affixed to machinery purchased by the
> Navy.  In my opinion, based on my experience, unless
> expressly directed to do so by the Navy, GE was not
> permitted, under the specifications, associated
> regulations and procedures, and the actual practice as
> it existed in the field, to affix any type of warning
> to a Navy turbine that addressed alleged hazards of
> products that were not supplied by GE, such as thermal
> insulation materials that were procured by the Navy's
> shipbuilder from an insulation vendor pursuant to the
> Navy specifications."

At this stage of the proceedings, the facts identified in these affidavits, when viewed in the light most favorable to Defendant, would entitle Defendant to a complete defense.  Hagen, 739 F.Supp. 2d at 782-83.  Therefore, removal under § 1442(a)(1) was proper.[3]

## IV. CONCLUSION

For the reasons set forth above, removal was proper and Plaintiffs' Motion to Remand will be denied.

An appropriate order follows.

---

[3] It should be noted that "the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated.  Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense."  Hagen, 739 F.Supp. 2d at 782.